UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

LUCY BALESTER,

       Plaintiff,                   Civil Action No. 15-11050
                                    Honorable Denise Page Hood
       v.                     Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

       Defendant.
_____/

## <u>REPORT AND RECOMMENDATION</u>
## <u>ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 13, 16]</u>

Plaintiff Lucy Balester appeals a final decision of defendant Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). Both parties filed motions for summary judgment, which were referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  After review of the record, the Court finds that the appeals council's ("AC") reversal of the administrative law judge's ("ALJ") decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion **[R. 16]** be **GRANTED**;

- Balester's motion **[R. 13]** be **DENIED**; and,

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Balester's Background and Disability Application

Balester was 60 years old when she submitted her application for DIB in January 2013, alleging a disability onset date of December 1, 2010.  [R. 11-5, Tr. 84-88]. She has held previous employment as a cashier and scheduling coordinator.  [R. 11-6, Tr. 112]. Balester alleges disability based on migraines, osteoarthritis, rheumatoid arthritis, degenerative disc disease, malignant neoplasm of the renal pelvis, kidney issues, and gastroesophageal reflux disease (GERD). [R. 11-3, Tr. 54-55]. After a hearing, the ALJ found Balester to be disabled. [R. 11-2, Tr. 11]. However, the AC reviewed the matter and determined that Balester was not disabled; that constituted the final decision of the Commissioner. [*Id.*, Tr. 8]. Balester timely filed for judicial review. [R. 1].

### B.    The AC's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

2

can be expected to last for a continuous period of not less than 12 months."
42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments[1] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

Applying this framework, the AC concluded that Balester was not disabled. At the first step, it found that Balester had not engaged in substantial gainful activity since her alleged onset date. [R. 11-2, Tr. 7]. At the second step, it found that Balester had the severe impairments of cervical degenerative disc disease with radiculopathy, osteoarthritis, lumbago, rheumatoid arthritis, and migraine headaches. [*Id.*]. Next, it concluded that none of Balester's impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*].

Between the third and fourth steps, the AC found that Balester had the RFC to perform "light work"[2] with the following additional limitations:

> [S]he could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; frequently stoop, kneel, crouch, and crawl; frequently handle with the bilateral upper extremities; and, must avoid concentrated exposure to noise and vibration.

[*Id.*, Tr. 7-8]. At step four, the AC found that Balester could perform her past relevant work as an appointment clerk, as defined by the Dictionary of Occupational Titles. [*Id.*, Tr. 8].

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." § 404.1567(b).

## II.    ANALYSIS

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the prior decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded the Commissioner's decision is conditioned on the AC's adherence to governing standards. "Chief among these is the rule that the [AC] must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based upon fragments of the evidence, and "must take into account

5

whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). The AC's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Balester argues that the AC did not follow Social Security regulations or due process in reaching its conclusion and that that its conclusions were not based on substantial evidence. Before addressing these arguments, the Court must address the brief submitted by his counsel, Joshua L. Moore.  Previously, this Court has warned him that he could face sanctions and referral for disciplinary action due to his "almost complete lack of argument development," *Spiteri v. Colvin*, No. CV 14-14140, 2015 WL 7258749, at *3 and n. 3 (E.D. Mich. Nov. 9, 2015), *report and*

6

*recommendation adopted sub nom. Spiteri v. Comm'r of Soc. Sec.*, No. 14-CV-14140, 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015); discovered a relevant treating physician opinion that Moore failed to cite in *Fisher v. Colvin*, No. CV 14-13516, 2015 WL 7251308, at *3 (E.D. Mich. Oct. 30, 2015), *report and recommendation adopted sub nom. Fisher v. Comm'r of Soc. Sec.*, No. 14-CV-13516, 2015 WL 7717164 (E.D. Mich. Nov. 30, 2015); found that he seriously misrepresented the ALJ in *Rhodes v. Colvin*, No. CV 14-13716, 2015 WL 6509151, at *3 (E.D. Mich. Oct. 7, 2015), *report and recommendation adopted sub nom. Rhodes v. Comm'r of Soc. Sec.*, No. 14-13716, 2015 WL 6796594 (E.D. Mich. Nov. 6, 2015); and found that his client met a listing despite Moore's "cursory and underdeveloped" argument. *Harper v. Comm'r of Soc. Sec.*, No. 2:14-CV-11630-LJM, 2015 WL 4509076, at *4 (E.D. Mich. July 24, 2015).  Other judges have warned Moore, including the Honorable Gerald E. Rosen, whose rebuke emphasized that Moore was providing a disservice to his clients:

> Such hyperbole and generalized accusations of ALJ misfeasance are no substitute for engagement with the actual evidence in the administrative record and the explanations and analysis actually put forward by the ALJ. Counsel ill serves his clients by charging the ALJs with wholesale dereliction of their duties, rather than identifying specific findings by the ALJs that might lack evidentiary support or rest upon legally deficient reasoning.

7

*Roberts v. Comm'r of Soc. Sec.*, No. 14-11994, 2015 WL 5439725, at *2 (E.D. Mich. Sept. 15, 2015).

As is Moore's habit, his brief on behalf of Balester fails to cite to any of the medical record and makes unsupportable allegations regarding the AC's analysis. (These deficiencies are described more fully below.) The Court notes that Moore filed the brief on behalf of Balester in June of 2015, prior to the warnings in the decisions described above. Should Moore's subsequent briefing suffer from the same deficiencies, he is warned again that he could face sanctions and a referral for disciplinary action.

"[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) (citation and internal quotation marks omitted). This quote is apropos to Balester's brief, but in order to not prejudice Balester based upon her attorney's deficient performance, the Court thoroughly reviewed the record. Having done so, the Court finds that her arguments are without merit.

8

## A.

To assess Balester's argument that the AC reversed the ALJ's decision without due process, the Court must determine whether the applicable procedures were followed, and if so, whether those procedures provide due process to the claimant. Here, the Social Security appeals process was followed and Balester provides no evidence to the contrary. She cites to the Social Security Administration's "Hearings, Appeals & Litigation Law Manual" at section I-2-6-1 for the proposition that the ALJ must conduct a full and fair hearing. 1993 WL 643020 (July 28, 2015) ("HALLEX I-2-6-1"). But a hearing was conducted by an ALJ, and HALLEX I-2-6-1 does not dictate that a hearing is required by the AC.

Under the regulations, the AC may decide to review an ALJ's decision *sua sponte* within sixty days, and must simply mail a notice of review to all parties stating the reasons for the review and the issues to be considered. 20 C.F.R. § 404.969, 20 C.F.R. § 404.973. Here, notice was sent to Balester within sixty days of the ALJ's decision and it detailed the reasons that the AC determined that the ALJ's decision was not supported by substantial evidence. [R. 11-4, Tr. 78-81]. The notice provided Balester with the opportunity to send additional information, to request an appearance before the appeals council, and to request a hearing before an

9

ALJ. [*Id.*, Tr. 81-83]. Accordingly, Balester's attorney sent a brief to the AC in support of the ALJ's ruling and filed additional medical evidence. [R. 11-6, Tr. 146-48; R. 11-8, Tr. 379-87].  The AC's final decision was rendered only after this notice and opportunity to be heard was provided.  [R. 11-2, Tr. 4-8],

Social Security proceedings before the AC implicate a claimant's property interest in her benefits – an interest that is protected by the Fifth Amendment. *Flatford v. Chater,* 93 F.3d 1296, 1304-05 (6th Cir. 1996). "At a minimum, the Due Process Clause requires that an individual is afforded notice and an opportunity to be heard before the deprivation of a protected interest through adjudication." *Ferriell v. Comm'r of Soc. Sec.*, 614 F.3d 611, 620 (6th Cir. 2010).  As noted, Balester was provided with notice and an opportunity to be heard in accordance with the regulations.  Under similar circumstances, the Sixth Circuit found that due process was provided.  *Id. at* 620-21 (due process provided when claimant had opportunity to contest AC's revision of his onset date).  Balester's due process argument is without merit.

**B.**

Using unwarranted hyperbole, Balester asserts, "There is absolutely no rationale nor discussion of Ms. Balester's medical problems in the ALJ's

decision. The ALJ's decision makes zero legal justifications for his RFC and further the RFC is contradictory to his severe impairment findings." [R. 13, PgID 441].  Then, Balester cites only to her testimony to support her attacks on the RFC, never to the evidence in the medical record. The original ALJ's decision was also largely based on Balester's testimony, which was a deficiency that the AC recognized in overturning it. [R. 11-2, Tr. 6]. Balester's brief here suffers from the same overreliance on her subjective claims, and there is substantial evidence in the record to support the AC's decision.

Much of the evidence in the record predates the alleged onset date of December 1, 2010. There are records from 1994 to 1995, [R. 11-7, Tr. 149-73], and 2001 to 2014 [*Id.*, Tr. 174-247; R. 11-8, Tr. 248-387], with the majority of the records being before the alleged onset date. Prior medical evidence is only considered "insofar as it bears on the claimant's condition after the onset of disability." *Moore v. Comm'r of Soc. Sec.*, No. 11-11857, 2013 WL 1278478, at *3 (E.D. Mich. Mar. 26, 2013). Here, there is little objective evidence from before or during the relevant period that would support a finding of disability.

In December 2006, a CT showed that Balester had a two centimeter lesion in the inferior pole of the right kidney that was "suspicious for a solid

enhancing mass." [R. 11-7, Tr. 224]. Radiologist Stephan Loginsky, M.D., noted that neoplasm was not ruled out. [*Id.*]. Similar findings of a renal mass were made throughout 2007, 2008, and 2009. [*Id.*, Tr. 225, 227, 230-31, 241, 243-44, 245, 247; R. 11-8, Tr. 274-75, 276-80, 281-82, 332, 372-73, 378]. All of the records indicate no growth in the size of the mass, and it is never confirmed whether the mass is malignant or benign. [*Id.*].

In September 2007, she was diagnosed with anxiety, migraines, osteoarthritis, and abdominal pain, in addition to her possible malignant neoplasm. [R. 11-8, Tr. 276]. Her physical examination showed normal and unchanged gait, station, and posture, and her head, spine, and extremities were normal. [*Id.*, Tr. 279]. Follow up visits in October 2007, as well as March, May, and September, of 2008 were similar. [*Id.*, Tr. 259-60, 262-63, 264-65, 281-82]. In October 2008, her hypercholesterolemia was "at goal," her migraine symptoms were greatly improved, and her hypothyroidism was stable with medications. [*Id.*, 266-67]. She was seen several more times in 2009, when rheumatoid arthritis was added as a diagnosis. [*Id.*, Tr. 249, 250-51].

In April 2010, supine and upright radiographs of the abdomen were taken, showing early degenerative changes in the lumbar spine with minimal levoscoliosis. [R. 11-8, Tr. 293]. In July, a view of the lumbosacral

12

spine showed mild disc space narrowing at L5-S1 and mild degenerative changes generally, though her other disc spaces were normal and there were no other abnormal results. [*Id.*, Tr. 283].

There are much fewer records postdating the alleged onset date of December 1, 2010. In February 2011, Balester complained that her "bones hurt," and records indicate a history of fibromyalgia. [R. 11-8, Tr. 351-52]. The onset of the pain was said to be gradual and recurring for one year. [*Id.*]. Balester was seen again in November 2012. [*Id.*, Tr. 346-48]. Her history of rheumatoid arthritis and fibromyalgia was noted, and she was provided medications for GERD, migraines, lumbago (lower back pain), arthritis, hypothyroidism, hypercholesterolemia, and anxiety. [*Id.*].

In March 2013, Balester saw Kenneth M. Kernen, M.D., about her renal mass. She reported blood in her urine, elevated cholesterol, depression, headaches, back pain and neck pain. [R. 11-8, Tr. 374-76]. She did not report any other urinary complaints, and the physical examination contained all normal findings, including normal gait and station of the head and neck. [*Id.*, Tr. 374-75]. Dr. Kernen's assessment was "[u]nspecified disorder of kidney and ureter." [*Id.*, Tr. 376].

Balester was also seen in March 2013 by state agency physician Leonidas Rojas, M.D., for a consultative examination. [*Id.*, Tr. 356-58]. She

13

reported that she suffers from migraines about fifteen times per month, has pain and stiffness in her lower back that is aggravated by prolonged standing, walking, or sitting, and that her left thumb was unable to bend in recent weeks. [*Id.*]. Dr. Rojas found that Balester was able to drive and do most housekeeping tasks. [*Id.*]. Most of his findings were normal. [*Id.*]. In the supplemental report, Dr. Rojas found that Balester was able to do every activity listed under "current abilities," though some unspecified limitations were noted for standing, bending, stooping, carrying, and pushing, due to degenerative disc disease. [*Id.*, Tr. 359]. Except for Balester's Babinski sign test, her test results for her reflexes of her extremities and ambulation were normal, and the clinical evidence did not show that she needed a walking aid. [*Id.*, Tr. 359-60]. The ranges of motion in her lumbar spine and knees were somewhat limited, but the remainder of the testing of her joints was normal. [*Id.*, Tr. 361-62].

Shortly thereafter, state agency consultants Paul Liu, D.O., and Myung Ho Hahn, M.D., provided non-consultative medical statements on Balester's mental and physical impairments based on the medical record to that point. [R. 11-3, Tr. 54-63]. Dr. Liu found that Balester's diagnosed anxiety caused no more than mild limitations in her activities of daily living, social functioning, and "concentration, persistence or pace," and that there

14

had been no repeated episodes of decompensation. [*Id.*, Tr. 58]. With respect to Balester's physical impairments, Dr. Hahn found that the alleged intensity of her symptoms were not consistent with the totality of the evidence, citing specifically her ability to complete necessary daily tasks, her normal gait, and lack of a need for a walking aid. [*Id.*, Tr. 59]. He found that Balester could occasionally lift twenty pounds, could frequently lift ten pounds, could stand or sit for six hours in an eight-hour work day, and had no postural limitations other than climbing ramps, stairs, ladders, ropes, or scaffolds, which she could only do occasionally. [*Id.*, Tr. 60]. Dr. Rojas, Dr. Liu, and Dr. Hahn provided the only medical opinions regarding Balester's limitations in the record.

Contrary to Balester's claims, the AC gave ample justification from the record for its findings. It noted initially that there is no medical source indicating the need for the severe limitations previously imposed by the ALJ. [R. 11-2, Tr. 5]. It also noted that during the alleged period of disability, Balester only sought medical care for her alleged impairments on a few occasions, at times over a year apart. [*Id.*; *see also* R. 11-8, Tr. 346-48, 349-50, 351-52, 363-65, 366-68, 374-76, 381-84]. Balester argues that the AC failed to consider her lack of insurance and ability to afford treatment when citing the lack of records in the relevant time period. But

15

the records of her visits from 2012, 2013 and 2014 reflect normal musculoskeletal, motor, and sensory findings. [*Id.*]. The AC did not rely on the lack of treatment records *per se*, but on the lack of support for Balester's disability claim within her records. *See Lee v. Comm'r of the Soc. Sec. Admin.*, No. 14-CV-11292, 2015 WL 4394275, at *13 (E.D. Mich. July 16, 2015). It aptly deduced that "the treating source evidence in the record does not reflect deficits in grasping or fingering with the claimant's hands, deficits with range of motion in the neck, or the need to change positions at will." [R. 11-2, Tr. 5].

Balester objects to the AC's reliance on the opinion of Dr. Hahn, who did not examine Balester before rendering his opinion. But the AC relied equally on the findings of Dr. Rojas, who did examine Balester. [R. 11-2, Tr. 5-6]. Dr. Rojas found no limitations that would prevent Balester from performing light work as defined by 20 C.F.R. § 404.1567. [R. 11-8, Tr. 359]. Further, the AC was in fact required to consider the opinions of state agency medical consultants. 20 C.F.R. § 404.1527(e)(2)(i); SSR 96-6p, 1996 WL 374180. And "while not always the most desirable route, the regulations permit an ALJ to give the greatest weight to the opinion of a non-examining medical source. This is particularly true in a case where there is no readily identifiable treating physician opinion to discount or

16

reject." *Grady v. Comm'r of Soc. Sec.*, No. 12-CV-13349, 2013 WL
4670365, at *13 (E.D. Mich. Aug. 30, 2013). Given the lack of a treating
physician's opinion here, the AC was entitled to rely in part on a non-
examining source in crafting the RFC.

Balester was found to have the RFC to perform light work with some
additional limitations. [R. 11-2, Tr. 7]. This finding is supported by the
opinions of Dr. Rojas and Dr. Hahn and other substantial evidence within
the record. In the absence of certain additional limiting factors that were not
present here, a person who can do light work can also do sedentary work.
20 C.F.R. § 404.1567(b). Therefore, the AC found that Balester could
return to her past relevant work as an appointment clerk, which is a
sedentary position. *Directory of Occupational Titles* 237.367-010, 1991 WL
672185. [R. 11-2, Tr. 8]. These findings are in accordance with law, and the
AC's decision should be upheld.

## III.    CONCLUSION

The Court **RECOMMENDS** that the Commissioner's motion for summary judgment [R. 16] be **GRANTED**, that Balester's motion for summary judgment [R. 13] be **DENIED**, and the Commissioner's decision be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 14, 2016

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection

18

must be served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"
etc., and **must specify** precisely the provision of this Report and
Recommendation to which it pertains.  Not later than fourteen days after
service of objections, **the non-objecting party must file a response** to
the objections, specifically addressing each issue raised in the objections in
the same order and labeled as "Response to Objection #1," "Response to
Objection #2," etc.  The response must be **concise and proportionate in
length and complexity to the objections**, but there is otherwise no page
limitation.  If the Court determines that any objections are without merit, it
may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served
upon counsel of record and any unrepresented parties via the Court's ECF
System to their respective email or First Class U.S. mail addresses
disclosed on the Notice of Electronic Filing on July 14, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager

19